**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

|  |  |
|---|---|
| GEORGIA SECOND AMENDMENT, INC., AND THOMAS STEPHENS, | |
| Plaintiffs, | Civil Action No. |
| v. | 2:23-CV-24-RWS |
| BRIAN KEMP AND MICHAEL CHASTAIN, | |
| Defendants. | |

## ORDER

This case comes before the Court on Plaintiffs Georgia Second Amendment, Inc. and Thomas Stephens' (collectively, "Plaintiffs") Motion for Preliminary Injunction [Dkt. 2], Defendant Brian Kemp's Motion to Dismiss [Dkt. 14], and Defendant Michael Chastain's Motion to Dismiss [Dkt. 16].  After reviewing the parties' briefs, the Court enters the following Order.

## BACKGROUND

### I.     Factual History

Plaintiff Georgia Second Amendment, Inc. ("GA2A") is a Georgia non-profit corporation whose mission is to foster the rights of its members to keep and bear arms.  Its members include individuals between the ages of 18 and 20 who

have not served in the military. Plaintiff Thomas Stephens is an 18-year-old member of GA2A and resident of Lumpkin County. Defendant Brian Kemp is the governor of the state of Georgia, and Defendant Michael Chastain is the judge of the Probate Court of Lumpkin County. Judge Chastain has the authority to issue Georgia weapons carry license ("GWLs") to residents of Lumpkin County under O.C.G.A. § 16-11-129.

Georgia has few restrictions on the ability to purchase and carry firearms. At issue in this case is one of those few such restrictions. An individual may purchase and carry a handgun in public if he or she is a "lawful weapons carrier." O.C.G.A. § 16-11-126. A "lawful weapons carrier" is defined as someone who is "licensed or eligible for a license pursuant to O.C.G.A. § 16-11-129 and who is not otherwise prohibited by law from possessing a weapon or long gun." O.C.G.A. 16-11-125.1(2.1). The statute excludes from this definition "any person younger than 21 years of age" unless he or she is in the military or is a military veteran. O.C.G.A. § 16-11-129(b)(2)(A). In order words, lawful weapons carriers must be at least 21 years old or have served in the military. If someone who is not a lawful weapons carrier nevertheless carries a weapon, he or she could be charged with the misdemeanor offense of "unlawful carrying of a weapon" under O.C.G.A. § 16-11-126(g).

2

On February 7, 2023, Stephens sought to apply for a GWL. However, because he was not yet 21 years old or a military veteran, he was not able to apply. This suit followed.

## II.　Procedural History

On February 13, 2023, Plaintiffs filed their Complaint against Defendants in their official capacities, asserting a single claim under 42 U.S.C. § 1983 for violation of the Second Amendment [Dkt. 1]. Plaintiffs alleged that Defendants violated the Second Amendment by preventing Stephens and other GA2A members between the ages of 18 and 20 from obtaining GWLs and from carrying a handgun in public in case of confrontation. As a result, they asked the Court to: declare that O.C.G.A. § 16-11-126(g)(1) is unconstitutional to the extent it prohibits Stephens and other GA2A members who are 18-20 years old from obtaining GWLs and from carrying handguns in public; grant a permanent and preliminary injunction prohibiting Governor Kemp from enforcing that same statute against Stephens and GA2A's other 18-20 year old members to the extent it prohibits them from carrying handguns in public; and grant a permanent and preliminary injunction prohibiting Judge Chastain from declining to accept GWL applications from, or issuing GWLs to, Plaintiffs solely because of their age. The same day, Plaintiffs also filed their Motion for Preliminary Injunction, specifically

3

asking the Court to prevent Governor Kemp from enforcing the age requirement of § 16-11-126(g)(1) and Judge Chastain from enforcing the age requirement of § 16-11-129(b)(2)(A).

On March 24, 2023, both Defendants moved to dismiss Plaintiffs' Complaint [Dkt. 14, 16] and filed responses in opposition to Plaintiffs' Motion for Preliminary Injunction [Dkt. 15, 17]. Governor Kemp specifically argued that the Second Amendment's plain text does not cover the conduct at issue here and the challenged restriction is consistent with this Nation's historical tradition of regulating firearms. Judge Chastain adopted Governor Kemp's arguments and further argued that Georgia's Constitutional Carry Act removes any Second Amendment controversy between himself and Plaintiffs and Plaintiffs cannot obtain injunctive relief or litigation expenses against him. Plaintiffs did not file a reply in support of their Motion for Preliminary Injunction, but they opposed Defendants' Motions to Dismiss [Dkt. 20, 21]. Governor Kemp filed a reply in support of his Motion to Dismiss [Dkt. 22].

## DISCUSSION

### I.    Legal Standards

#### A.    Injunctive Relief

"[A] district court may grant a preliminary injunction only if the movant establishes the following: (1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest." N. Am. Med. Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211, 1217 (11th Cir. 2008) (citation and quotations omitted). "The preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites." Cunningham v. Adams, 808 F.2d 815, 819 (11th Cir. 1987) (citation and quotations omitted).

A movant's ability to demonstrate the first prerequisite, a substantial likelihood of success on the merits, is usually the most important consideration. See Schiavo ex rel. Schindler v. Schiavo, 357 F. Supp. 2d 1378, 1383 (M.D. Fla. 2005) (citation omitted). And because the inquiry calls for a balancing of the equities, the movant's burden to demonstrate a possibility of success on the merits

will vary depending upon the Court's assessment regarding the strength and weakness of the other factors. Id. (citation omitted).

B.    **Motion to Dismiss**

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964–65 (2007)). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 127 S. Ct. at 1974). A claim to relief is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id.

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). However, the same does not apply to legal conclusions set forth in the complaint. Sinaltrainal v. Coco-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009)

(citing Iqbal, 129 S. Ct. at 1949). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. Furthermore, the court does not "accept as true a legal conclusion couched as a factual allegation." Twombly, 127 S. Ct. at 1965.

## II. Analysis

### A. Plaintiffs' Motion for Preliminary Injunction [Dkt. 2]

Plaintiffs move for a preliminary injunction preventing Governor Kemp from enforcing the age requirement of § 16-11-126(g)(1) and Judge Chastain from enforcing the age requirement of § 16-11-129(b)(2)(A). They argue that: they are likely to succeed on the merits of their Second Amendment claim because the bearing of arms by 18-20 year old people was not historically banned; irreparable harm is presumed by the deprivation of a constitutional right; Defendants will not be harmed if Stephens obtains a GWL; and the public interest is served by the issuance of a preliminary injunction. [Dkt. 2-1 – Mot. for Prelim. Injunction, at 3-6]. Defendants disagree, arguing that none of the factors militate in favor of a preliminary injunction.

The Court need not evaluate all the preliminary injunction factors, because Plaintiffs cannot show that they are substantially likely to succeed on the merits of their Second Amendment claim.

7

Under the Second Amendment, "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend II. The Supreme Court has held that this Amendment guarantees an "individual right to possess and carry weapons in case of confrontation," but has also noted that that right "is not unlimited." District of Columbia v. Heller, 554 U.S. 570, 592, 626 (2008).

After the Supreme Court decided Heller, courts applied a two-part test to analyze the Second Amendment's limits and challenges to those limits: first, courts asked whether the Second Amendment protected the conduct that the government sought to restrict, and if it did, courts then evaluated the law under the appropriate level of means-end scrutiny. Nat'l Rifle Ass'n. v. Bondi, 61 F.4th 1317, 1321 (11th Cir. 2023) (citation omitted). However, the Supreme Court recently altered step two of this test in New York State Rifle & Pistol Association, Inc. v. Bruen, 142 S. Ct. 2111, 2127 (2022). Now, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." Id. at 2126. To rebut that presumption, "the government must demonstrate that [a state's] regulation is consistent with this Nation's historical tradition of firearm regulation." Id. Put another way, if the Second Amendment's plain text covers an individual's conduct, then "the government must affirmatively

8

prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." Id. at 2127.

The Eleventh Circuit recently held in Bondi that a similar Florida law prohibiting the purchase of firearms by individuals under the age of 21 is constitutional. 61 F.4th at 1333. In so doing, the Court assumed without deciding "that the Second Amendment's plain text covers 18-to-20-year-olds when they buy firearms." Id. at 1324-25 (citation and quotations omitted). It then moved to the second step of the Bruen test and looked for historical analogues of the challenged Florida law. Id. at 1325-32. It noted that "at least nineteen states and the District of Columbia banned the sale and even the giving or loaning of handguns and other deadly weapons to 18-to-20-year-olds by the close of the nineteenth century," and they "did so to enhance public safety." Id. at 1331. Accordingly, the Court concluded that the law in question "and its historical predecessors are relevantly similar under the Second Amendment," and therefore the law "does not infringe on the right to keep and bear arms." Id. (citation omitted).

This Court is bound by the Eleventh Circuit's Bondi ruling. Plaintiffs do not even try to convince the Court otherwise[1]. But even if the Court were not so

---

[1] Plaintiffs did not file a reply in support of their Motion for Preliminary Injunction, and they only mentioned Bondi in passing in their opposition to Governor Kemp's Motion to Dismiss. That brief reference related to the Court's having assumed 18-to-20-year-olds

bound, it would see no reason to deviate from what is an exceptionally detailed and well-reasoned ruling. Accordingly, the Court finds that Plaintiffs are not substantially likely to succeed on the merits of their Second Amendment claim and are thus not entitled to a preliminary injunction preventing Governor Kemp from enforcing the age requirement of § 16-11-126(g)(1) and Judge Chastain from enforcing the age requirement of § 16-11-129(b)(2)(A). Plaintiffs' Motion for Preliminary Injunction is therefore **DENIED**.

### B.    Governor Kemp's Motion to Dismiss [Dkt. 14]

Next, Governor Kemp moves to dismiss Plaintiffs' complaint, arguing that Plaintiffs have not stated a claim for relief because the challenged provisions are consistent with the Second Amendment. [Dkt. 14 – Mot. to Dismiss, at 3-4, 8-14]. His substantive arguments mirror those in his opposition to Plaintiffs' request for injunctive relief. In response, Plaintiffs first strenuously dispute Governor Kemp's contention that the Second Amendment's plain text does not cover 18-to-20-year-olds when they buy firearms. [Dkt. 20 – Opp. Br., at 4-5]. Next, Plaintiffs turn to a series of cases which they argue constitute "the weight of persuasive authority that actually has considered this issue" and which, of course, support their position:

---

are included in people protected by the Second Amendment and did not address the historical analysis by the Court.

Nunn v. State, 1 Ga. 243, 251 (1846), which acknowledged "[t]he right of the whole people, old and young, men, women and boys, . . . to keep and bear arms. . . ."; Worth v. Harrington, 2023 WL 2745673 (D. Minn. Mar. 31, 2023), which found unconstitutional laws restricting the bearing of handguns in public by 18-to-20-year-olds; and Firearms Policy Coalition, Inc. v. McCraw, 623 F. Supp. 3d 740, 756 (N.D. Tex. 2022), which held that Texas could not prohibit 18-to-20-year-olds from carrying handguns for self-defense outside the home. [Id. at 5-8]. Finally, Plaintiffs note that Georgia did not impose an age component on the carrying of firearms until 1910, and that that age requirement was not raised to 21 until 1968. [Id. at 9-11].

None of these arguments sway the Court from its view that the Eleventh Circuit's ruling in Bondi applies with equal force here. First, the Court need not determine whether the Second Amendment's plain text covers 18-to-20-year-olds when they buy firearms, since that determination is only the first step of the Bruen test and, for purposes of this Order, has been assumed, and the government has satisfied the second step regardless. Second, though it is true that some other courts have reached differing conclusions and found laws similar to those at issue here to be unconstitutional, this Court is not bound by those rulings. In any event, Worth is on appeal. And Plaintiffs' reliance on Nunn is not persuasive. As

11

Governor Kemp points out, the Georgia Supreme Court later acknowledged that Nunn contained some broad language but "was never intended to hold that men, women, and children had some inherent right to keep and carry arms or weapons of every description, which could not be infringed by the Legislature, unless as a result of the constitutional provision under consideration." [Dkt. 22 – Reply Br., at 6 (citing Strickland v. State, 137 Ga. 1, 8 (1911))]. Finally, the fact that Georgia did not impose an age component on the carrying of firearms until 1910 or raise that requirement to 21 until 1968 is largely insignificant, since the Bruen test simply requires consistency with the *Nation's* historical tradition of firearm regulation and plenty of other states across the country had analogous age restrictions decades before then. Bondi, 61 F.4th at 1333.

As the Eleventh Circuit exhaustively detailed and concluded in Bondi, laws restricting 18-to-20-year-olds from obtaining GWLs and from carrying handguns in public are "consistent with our Nation's historical tradition of firearm regulation." 61 F.4th at 1320, 1325-32. Once again, the Court has no reason to question this conclusion. Accordingly, Plaintiffs have failed to state a valid claim against Governor Kemp, and his Motion to Dismiss is **GRANTED**.

**C.      Judge Chastain's Motion to Dismiss [Dkt. 16]**

In his Motion to Dismiss, Judge Chastain joins in and adopts Governor

Kemp's arguments that the challenged state statutes are constitutional, and also

argues that the claim against him should be dismissed because Georgia's

Constitutional Carry Act removes any Second Amendment controversy between

Plaintiffs and him and Plaintiffs cannot obtain injunctive relief or attorney's fees

and litigation expenses against him.  [Dkt. 16-1 – Chastain Mot. to Dismiss, at 3-

7].  Since the Court held that Governor Kemp's argument was a basis for dismissal

of the claim against him, that argument applies with the same force here, such that

the claim against Judge Chastain is also dismissed.  The Court need not consider

Judge Chastain's other arguments for dismissal.

Accordingly, Plaintiffs have failed to state a valid claim against Judge

Chastain, and his Motion to Dismiss is **GRANTED**.

<b>CONCLUSION</b>

For the foregoing reasons, Plaintiffs Georgia Second Amendment, Inc. and

Thomas Stephens' Motion for Preliminary Injunction [Dkt. 2] is **DENIED**,

Defendant Brian Kemp's Motion to Dismiss [Dkt. 14] is **GRANTED**, and

Defendant Michael Chastain's Motion to Dismiss [Dkt. 16] is **GRANTED**.

Accordingly, the Clerk is directed to close this case.

13

**SO ORDERED** this 9th day of June, 2023.

RICHARD W. STORY
United States District Judge